UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CLARINET, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:10 CV 1686 DDN |
| | ) |
| ESSEX INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This action is before the court on the motion of defendant Essex Insurance Company to dismiss. (Doc. 19.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

**I.  BACKGROUND**

On July 20, 2010, plaintiff Clarinet, LLC ("Clarinet") commenced this action against defendant Essex Insurance Company ("Essex") in the Circuit Court of the City of St. Louis, Missouri. In its petition, Clarinet seeks a declaratory judgment (Count 1), damages for breach of contract (Count 2), and damages for vexatious and bad faith refusal to pay (Count 3). On September 10, 2010, Essex removed the action to this court pursuant to 28 U.S.C. § 1441, based on diversity of citizenship subject matter jurisdiction, 28 U.S.C. § 1332.

<u>Clarinet's allegations in this suit</u>

Clarinet alleges the following facts in its petition:

In 2005, Clarinet purchased real property located at 612 N. 1st Street, St. Louis, Missouri 63102, which was the form location of the Switzer Building. (Petition, Doc. 1-1 at ¶¶ 5-6.) The Switzer Building was a turn-of-the-century masonry structure, consisting of six stories above grade, one story below grade, and an annex building. It was listed as a historical building with the National Register of Historic Places as part of the Laclede's Landing Historic District. (<u>Id.</u> at ¶¶ 7-8.)

On July 7, 2006, Essex issued a Commercial General Liability insurance policy (No. 3CM5800) to Clarinet, effective July 7, 2006 through October 7, 2006. (Id. at ¶ 9.) Essex provided Clarinet with insurance under renewal policies, consisting of substantially similar terms and conditions as the first policy. (Id. at ¶ 10.) The last policy was effective from April 24, 2007 through July 24, 2007 (No. 3V2139). All versions of the policy are referred to as "the Policy". (Id.) Clarinet paid all premiums that were due. (Id.)

The Policy, which is attached to the petition as Exhibit A, provided coverage to Clarinet, its members, managers, and any person or organization acting as Clarinet's real estate manager. (Id. at ¶ 11.) The Policy provided the following coverage:

> COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>
> I. Insuring Agreement
>
>> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>
>> * * *
>
>> b. This insurance applies to "bodily injury" and "property damage" only if:
>>
>>> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
>>>
>>> (2) The "bodily injury" or "property damage" occurs during the policy period.

(Id. at pp. 3, 33.)

The policy defines "property damage" as:

> (a) Physical injury to tangible property, including all resulting loss or use of that property. All such loss

>     of use shall be deemed to occur at the time of the
>     physical injury that caused it; or
>
>     (b) Loss of use of tangible property that is not
>     physically injured. All such loss of use shall be
>     deemed to occur at the time of the "occurrence" that
>     caused it.

(Id. at pp. 4, 45-46.)

The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Id. at pp. 4, 45.)

On July 19, 2006, a severe windstorm struck the City of St. Louis and its metropolitan area ("the Storm"). (Id. at ¶ 16.) The Storm caused a portion of the Switzer Building to collapse, and blew bricks and debris from the Switzer building into the immediately adjacent Eads Bridge. This caused property damage to the bridge and to an electrical substation. (Id. at ¶¶ 16-17.) The Eads Bridge was and is owned by the City of St. Louis or one of its political subdivisions. (Id. at ¶ 17.)

The Storm extensively damaged the Switzer Building, rendering it structurally unsound and an imminent threat of harm to third party property and persons, in that the Storm: destroyed major portions of the south and east walls of the Switzer Building; destroyed substantial portions of the building's roof and floor area; destroyed or shifted interior structural members of the building; left large portions of the east and north walls of the building with no support; and further exposed the building's interior to the weather, which caused continued deterioration. (Id. at ¶¶ 18-19.) The partially destroyed south wall of the Switzer Building was immediately adjacent to the Eads Bridge, the electrical substation, and other St. Louis City property that had been damaged by the Switzer Building's partial collapse. (Id. at ¶ 20.)

Following the Storm, Clarinet completed various stabilization efforts in order to abate the hazardous condition and avoid further damage to third party property. (Id. at ¶¶ 21-22.) The stabilization efforts lasted several months and cost over $500,000. (Id. at ¶ 23.) Despite Clarinet's stabilization efforts, the Switzer Building continued to endanger persons and property. (Id. at ¶ 24.) As of late April, 2007, the Switzer Building remained structurally unsound, unstable, and

constituted a continuing hazard and immediate threat to public safety. (Id. at ¶ 25.) Due to its dangerous condition, the Switzer Building needed to be demolished. (Id.) However, because of its listing as a historic landmark, Clarinet had to obtain the approval of various St. Louis City agencies before demolition. (Id. at ¶ 26.) St. Louis City initially resisted Clarinet's demolition attempts, and sought to preserve some or all of the structure. (Id. at ¶¶ 27-28.)

On June 6, 2007, St. Louis City building inspectors issued a Notice of Emergency Condemnation, which required immediate demolition of the Switzer Building to abate the dangers posed to persons and third party property. (Id. at ¶ 29.) Essex hired Paric Corporation ("Paric") to demolish the Switzer Building, which it did on June 18, 2007. (Id.) The demolition costs exceeded $650,000. (Id. at ¶ 32.)

On December 31, 2008, the City of St. Louis filed suit against Clarinet and its members for the damage to Eads Bridge when the Storm caused the Switzer Building to partially collapse and blew bricks and debris from the Switzer Building into the bridge ("City Suit"). (Id. at ¶ 33.) Although Essex acknowledged coverage for this claim, and is providing Clarinet and its members with a defense and indemnity in the City Suit, Essex has denied coverage for Clarinet's stabilization and demolition costs. (Id. at ¶¶ 34-36.)

In Count I of its petition in the instant action, Clarinet seeks a declaratory judgment that it is entitled to coverage for the stabilization and demolition costs of the Switzer Building from Essex. (Id. at ¶¶ 37-40.) In Count II, Clarinet alleges that Essex breached the Policy by failing to pay for the stabilization and demolition costs of the Switzer Building. (Id. at ¶¶ 41-45.) In Count III, Clarinet alleges Essex's refusal to provide coverage was made in bad faith, and was unreasonable, vexatious, and without reasonable cause, and therefore Essex is liable for interest, penalties, costs, and Clarinet's attorneys' fees. (Id. at ¶¶ 46-51.)

In its amended counterclaim in this action, Essex seeks payment for its costs and attorneys' fees incurred by defending this suit. (Doc. 17.)

## II. MOTION TO DISMISS

Essex moves to dismiss Clarinet's claims under Fed. R. Civ. P. 12. It argues that it filed a federal declaratory judgment action against Clarinet on October 15, 2007, and in that action, Clarinet filed and argued as counterclaims that it was entitled to payment for expenses related to the stabilization and demolition of the Switzer Building. Essex argues that the court granted it summary judgment on Clarinet's counterclaims and as a result, Clarinet's current claims are barred by the doctrines of res judicata and collateral estoppel. (Docs. 19, 20.)

Clarinet responds that its claims are not barred because the earlier federal suit concerned whether Essex had a duty under its contract with Clarinet to defend Paric's breach of contract claim against Clarinet for Clarinet's alleged failure to pay Paric for its demolition work. Clarinet also argues that the present suit concerns the costs Clarinet incurred in stabilizing and demolishing the Switzer Building, and not Clarinet's performance of its obligations under the contract with Paric. (Doc. 22.)

Essex replies that the court granted summary judgment in its favor for Clarinet's counterclaims, which are the same allegations and arguments on which Clarinet brings in this law suit. Essex also argues that the court found that the "occurrence" was the damage to third party property, not the windstorm, and thus Clarinet's claims against it are barred. (Doc. 26.)

## III. DISCUSSION

The parties agree that Missouri law provides the substantive rules of decision for deciding whether res judicata and collateral estoppel apply to Clarinet's claims.

**A. The earlier federal lawsuit--Essex v. Paric Corporation, et al.**

On October 15, 2008, Essex filed suit in this federal district court against Paric and Clarinet (including its members) (collectively "Clarinet"), <u>Essex Insurance Company v. Paric Corporation, et al.</u>, No. 4:08 CV 1595 ERW. In that lawsuit Essex sought a declaratory judgment that:

> 1. Policy No. 3CV2139 provides no coverage to CLARINET, or any of CLARINET'S members . . . or to any other person for the claims asserted against CLARINET in the <u>PARIC</u> lawsuit, Case No. 0822-CC02140;
>
> 2. ESSEX INSURANCE shall have no duty or obligation to defend CLARINET, or any of CLARINET'S members . . . in the <u>PARIC</u> lawsuit, Case No. 0822-CC02140; and
>
> 3. ESSEX INSURANCE shall have no duty or obligation to indemnify CLARINET, or any of its members . . . any sum which CLARINET, or any of its members . . . may become obligated to pay by way of settlement or judgment in connection with the <u>PARIC</u> lawsuit, Case No. 0822-CC02140.

(<u>See</u> Case No. 4:08 CV 1595 ERW, Doc. 3 at 10.) In Case No. 0822-CC02140, in the Missouri Circuit Court, Paric sued Clarinet and its members for their failing to pay Paric for its demolition work, described above.

Clarinet filed a three counterclaims against Essex:

Count I sought a declaratory judgment that (a) the Policy issued by Essex covered the claims made by Paric in its state court lawsuit against Clarinet for the balance due for its work demolishing the Switzer Building; (b) Essex is liable under the Policy to defend and indemnify those defendants for the Paric claims; (c) Essex is liable for attorneys' fees and costs incurred by defendants in defending against Paric's claims and in prosecuting the instant action; and (d) Essex is liable for interest and costs. (<u>Id.</u> Doc. 44 at 4-5.)

Count II sought damages for breach of contract by Essex's failure to pay Clarinet's attorney's fees and costs expended in the Paric lawsuit and in bringing the current lawsuit.

Count III sought damages for Essex's alleged vexatious and bad faith refusal to pay under the Policy relating to the Paric lawsuit.

On July 6, 2010, the district court, in Case No. 4:08 CV 1595 ERW, granted Essex summary judgment on its claim for a declaratory judgment against Paric, Clarinet, and its members, holding that Essex had no duty under the Policy to defend Clarinet in the Paric Suit. (No. 4:08 CV 1595 ERW, Doc. 109.). The court framed the issues in that suit as:

> Both Plaintiff and Defendants seek a declaratory judgment with respect tot eh issue of whether the insurance policy issued by Plaintiff to Defendant Clarinet provides coverage for the claims asserted against the Clarinet Defendants in the Paric

lawsuit. Additionally, the breach of contract and vexatious and bad faith refusal to pay counterclaims asserted by the Clarinet Defendants depend on this Court's finding that Plaintiff had a duty to defend or indemnify the Clarinet Defendants with respect to the breach of contract claims asserted by Defendant Paric in the state court lawsuit. Accordingly, the Court must first examine the duty to defend or indemnify contained in the Policy at issue in this case.

(Id. at 11-12.)

The court held that Essex did not have a duty under the Policy to defend Clarinet and its members in the breach of contract suit brought in state court by Paric:

> The plain language of the Policy at issue in this case establishes that the insurer does not have the duty or the right to defend the insured in a lawsuit, unless the lawsuit alleges an occurrence, or an accident. The breach of contract allegations that form the basis for the Paric Lawsuit are based on intentional acts, that cannot be interpreted to be accidental in any way.
>
> * * *
>
> Because a breach of contract cannot amount to an "accident" or an "occurrence," and because the Paric lawsuit involves only claims related to Defendant Clarinet's alleged failure to comply with the terms of its contract with Defendant Paric, the Court must conclude that Plaintiff has no potential or possible liability to pay at the outset of the Paric lawsuit, and thus, there was no duty to defend.

(Id. at 12.)

The court then addressed Clarinet's arguments that the "occurrence" under the Policy that triggered Essex's duty to defend was the Storm, based on Essex's agreement to defend Clarinet in the City Suit. The court rejected Clarinet's arguments:

> The problem with Defendants' argument is that the claims made against the Clarinet Defendants in the Paric Lawsuit are not connected to the July 19, 2006 windstorm; rather, the claims are based on Defendant Paric's demolition of the Switzer Building in 2007, and the Clarinet Defendants' alleged subsequent refusal to pay. Moreover, as Defendants themselves stated, the "occurrence" in the City Lawsuit was "the July 19, 2006 windstorm that partially collapsed the Switzer Building and blew bricks and debris onto the adjacent City property, *causing damage to City Property*." Thus, the "occurrence" was not the windstorm itself, rather, it was damage to third party property that was caused by the windstorm. The Paric Lawsuit involves entirely different facts, namely, the voluntary demolition of Defendant Clarinet's own property. Thus,

> Plaintiff's assumption of the defense in the City Lawsuit is irrelevant to whether Plaintiff has a duty to defend the Clarinet Defendants in the Paric Lawsuit.

(Id. at 14-15) (emphasis in original).

The court then expressly declined to consider whether Essex was obligated under the Policy to repay Clarinet for the costs it incurred in demolishing the Switzer Building:

> [B]oth Plaintiff and Defendants have requested that the Court issue a declaratory judgment as to whether the Policy provides coverage for the breach of contract claims asserted against the Clarinet Defendants in the Paric Lawsuit. The Court has *not* been asked to determine whether Plaintiff is somehow obligated to pay the costs of the demolition of the Switzer Building. Defendants' arguments as to why Plaintiff should have to pay for the demolition costs are simply not relevant to the Court's determination of whether Plaintiff is obligated to provide a defense in the Paric Lawsuit.

(Id. at 15.)

The court also noted that, although the parties argued the applicability of Policy provisions which would "establish certain circumstances in which claims that would otherwise be covered are excluded from coverage," the exclusions were not relevant to the dispute before the court:

> These exclusions would certainly be relevant to the issue of whether Plaintiff is contractually obligated to pay for demolition costs, but they have little, if any, relevance to the issue of whether Plaintiff must provide the Clarinet Defendants with a defense against breach of contract claims. Moreover, because this Court has determined that there was no "occurrence," and thus there is no coverage, it is not necessary to examine whether any of the coverage exclusions apply.

(Id. at 16.)

**B. Res Judicata**

"Under Missouri law, [t]he doctrine of res judicata, or claim preclusion, bars relitigation of the same cf the same cause of action by the same parties or privities in a case if the two actions have the following common 'identities': '(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality of the person for or

- 8 -

against whom the claim is made.' " Niere v. St. Louis County, Missouri, 305 F.3d 834, 837 (8th Cir. 2002) (quoting Williams v. Finance Plaza, Inc., 78 S.W.3d 175, 183 (Mo. Ct. App. 2002).

Essex argues that the federal district court decided in Essex v. Paric Corporation that it was not liable for the stabilization and demolition costs incurred by Clarinet, thereby satisfying the first element of res judicata. Essex points to Clarinet's counterclaim in that suit, and Clarinet's motion for summary judgment.

Although Clarinet sought a declaratory judgment and brought breach of contract and vexatious and bad faith refusal to pay counterclaims against Essex in the earlier suit, these claims concerned Essex's duty to provide Clarinet with a defense in the Paric lawsuit. (See Case No. 4:08 CV 1595 ERW, Doc. 20-1 at ¶ 21-35.) These claims did not concern the costs Clarinet incurred in stabilizing and demolishing the Switzer Building.

Clarinet did, however, argue that Essex had a duty under the Policy to provide coverage for the costs Clarinet incurred in stabilizing and demolishing the Switzer Building. (Id. Doc. 20-2.) But, the court found these arguments irrelevant to the issues presented before it:

> Defendants repeatedly frame the issue in this case as whether the Policy at issue covers Defendant Clarinet's "efforts to prevent further collapse and resulting damage to third party property, including the Eads Bridge." However, this is not a proper statement of the issue before the Court at this time.

(Id. Doc. 109 at 15.) The court then stated that it had "*not* been asked to determine whether Plaintiff is somehow obligated to pay the costs of the demolition of the Switzer Building." (Id.) (emphasis in original).

Essex also points to language in the court's July 6, 2010 Memorandum and Order:

> Moreover, because this Court has determined that there was no "occurrence," and thus there is no coverage, it is not necessary to examine whether any of the coverage exclusions apply.

(Doc. 22-1 at 16.) However, reading this passage in context reveals that the court was referring to why Policy exclusions were not relevant to determining whether Essex had a duty to defend Clarinet in the Paric

Lawsuit. Because the court had found that Clarinet's alleged breach of its contract with Paric was not an "occurrence" under the Policy, the court did not need to determine whether a coverage exclusion under the Policy applied.

Based on the <u>Essex v. Paric Corporation</u> court's express statements that it was not asked and did not decide whether Essex had a duty under the Policy to provide coverage for Clarinet's costs incurred in stabilizing and demolishing the Switzer Building, this court now concludes that this issue was neither presented nor decided in the earlier federal suit.

Therefore, because <u>Essex v. Paric Corporation</u> and the current suit do not have the same identity of the thing sued for, the doctrine of res judicata does not bar the current suit.

## C. Collateral Estoppel

Under Missouri law, collateral estoppel applies when "(1) the issue in the present action is identical to the issue decided in the prior adjudication; (2) the prior adjudication resulted in a judgment on the merits; (3) the party against whom issue preclusion is asserted was a party or is in privity with a party to the prior adjudication; and (4) the party against whom collateral estoppel is asserted had a full and faith opportunity to litigate the issue in the prior suit." <u>American Home Assur. Co. v. Pope</u>, 487 F.3d 590, 600 (8th Cir. 2007) (quoting <u>James v. Paul</u>, 49 S.W.3d 786, 682 (Mo. 2001) (en banc).

As discussed above, because the issue in the instant action is not identical to the issue in the earlier federal action, the current suit is not barred by the doctrine of collateral estoppel.

## IV. CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the motion of defendant Essex Insurance Corporation to dismiss (Doc. 19) is denied.

            /S/  David D. Noce
           **UNITED STATES MAGISTRATE JUDGE**

Signed on April 19, 2011.