# AIA® Document A101™ – 1997

## Standard Form of Agreement Between Owner and Contractor
### where the basis of payment is a STIPULATED SUM

AGREEMENT made as of the Twenty-third day of January in the year of Two Thousand Seven
*(In words, indicate day, month and year)*

BETWEEN the Owner:
*(Name, address and other information)*

Clarinet, LLC
505 North 7th Street
Suite 2405
St. Louis, MO 63101

and the Contractor:
*(Name, address and other information)*

Paric Corporation
1001 Boardwalk Springs Place
Suite 220
O'Fallon, MO 63368

The Project is:
*(Name and location)*

Switzer Licorice Candy Factory Demolition
612 North 1st Street
St. Louis, MO 63101

The Architect is:
*(Name, address and other information)*

None

The Owner and Contractor agree as follows.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

This document has been approved and endorsed by The Associated General Contractors of America.




AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:47:55 on 01/23/2007 under Order No.1000224463_1 which expires on 2/28/2007, and is not for resale.
User Notes: (2087977832)

## ARTICLE 1   THE CONTRACT DOCUMENTS
The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement; these form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than Modifications, appears in Article 8.

## ARTICLE 2   THE WORK OF THIS CONTRACT
The Contractor shall fully execute the Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others.

## ARTICLE 3   DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION
§ 3.1 The date of commencement of the Work shall be the date of this Agreement unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.
*(Insert the date of commencement if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*

The Date of Commencement will coincide with Owner's written Notice to Proceed and receipt of all required permits and approvals necessary to commence the Work.

If, prior to the commencement of the Work, the Owner requires time to file mortgages, mechanic's liens and other security interests, the Owner's time requirement shall be as follows:

N/A

§ 3.2 The Contract Time shall be measured from the date of commencement.

§ 3.3 The Contractor shall achieve Substantial Completion of the entire Work not later than __42__ days from the date of commencement, or as follows:
*(Insert number of calendar days. Alternatively, a calendar date may be used when coordinated with the date of commencement. Unless stated elsewhere in the Contract Documents, insert any requirements for earlier Substantial Completion of certain portions of the Work.)*

| Portion of Work | Substantial Completion Date |
| --- | --- |
| | |

, subject to adjustments of this Contract Time as provided in the Contract Documents.
*(Insert provisions, if any, for liquidated damages relating to failure to complete on time or for bonus payments for early completion of the Work.)*

None

## ARTICLE 4   CONTRACT SUM
§ 4.1 The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum shall be Six Hundred Fifty-six Thousand Four Hundred Seventy-six Dollars and Zero Cents ($ 656,476.00 ), subject to additions and deductions as provided in the Contract Documents.

§ 4.2 The Contract Sum is based upon the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:
*(State the numbers or other identification of accepted alternates. If decisions on other alternates are to be made by the Owner subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date when that amount expires)*

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:47:55 on 01/23/2007 under Order No.1000224463_1 which expires on 2/28/2007, and is not for resale.
User Notes: (2087977832)

None

§ 4.3 Unit prices, if any, are as follows:

| Description | Units | Price ($ 0.00) |
|---|---|---|
| None | | |

## ARTICLE 5 PAYMENTS
### § 5.1 PROGRESS PAYMENTS

§ 5.1.1 Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

§ 5.1.2 The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

§ 5.1.3 Provided that an Application for Payment is received by the Architect not later than the First day of a month, the Owner shall make payment to the Contractor not later than the Twentieth day of the same month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than Twenty ( 20 ) days after the Architect receives the Application for Payment.

§ 5.1.4 Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Contract Sum among the various portions of the Work. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

§ 5.1.5 Applications for Payment shall indicate the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment.

§ 5.1.6 Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

.1 Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the Contract Sum allocated to that portion of the Work in the schedule of values, less retainage of Five percent ( 5.00% ). Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Section 7.3.8 of AIA Document A201-1997;

.2 Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction (or, if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing), less retainage of Five percent ( 5.00% );

.3 Subtract the aggregate of previous payments made by the Owner; and

.4 Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Section 9.5 of AIA Document A201-1997.

.5 No retainage will be held on Contractor's fee, General Conditions, permits or insurance.

§ 5.1.7 The progress payment amount determined in accordance with Section 5.1.6 shall be further modified under the following circumstances:

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:47:55 on 01/23/2007 under Order No.1000224463_1 which expires on 2/28/2007, and is not for resale.
User Notes: (2087977832)

.1 Add, upon Substantial Completion of the Work, a sum sufficient to increase the total payments to the full amount of the Contract Sum, less such amounts as the Architect shall determine for incomplete Work, retainage applicable to such work and unsettled claims; and
*(Section 9.8.5 of AIA Document A201-1997 requires release of applicable retainage upon Substantial Completion of Work with consent of surety, if any.)*

.2 Add, if final completion of the Work is thereafter materially delayed through no fault of the Contractor, any additional amounts payable in accordance with Section 9.10.3 of AIA Document A201-1997.

§ 5.1.8 Reduction or limitation of retainage, if any, shall be as follows:
*(If it is intended, prior to Substantial Completion of the entire Work, to reduce or limit the retainage resulting from the percentages inserted in Sections 5.1.6.1 and 5.1.6.2 above, and this is not explained elsewhere in the Contract Documents, insert here provisions for such reduction or limitation.)*

Retainage will be payable upon Owner's acceptance of the Work, or portion thereof.

§ 5.1.9 Except with the Owner's prior approval, the Contractor shall not make advance payments to suppliers for materials or equipment which have not been delivered and stored at the site.

§ 5.2 FINAL PAYMENT
§ 5.2.1 Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when:

.1 the Contractor has fully performed the Contract except for the Contractor's responsibility to correct Work as provided in Section 12.2.2 of AIA Document A201-1997, and to satisfy other requirements, if any, which extend beyond final payment; and

.2 a final Certificate for Payment has been issued by the Architect.

§ 5.2.2 The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the Architect's final Certificate for Payment, or as follows:

ARTICLE 6 TERMINATION OR SUSPENSION
§ 6.1 The Contract may be terminated by the Owner or the Contractor as provided in Article 14 of AIA Document A201-1997.

§ 6.2 The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201-1997.

ARTICLE 7 MISCELLANEOUS PROVISIONS
§ 7.1 Where reference is made in this Agreement to a provision of AIA Document A201-1997 or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

§ 7.2 Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*

(—) Prime Rate as established from time to time by US Bank of St. Louis, MO plus two percent (2%)

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Contractor's principal places of business, the location of the Project and*

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:47:55 on 01/23/2007 under Order No.1000224463_1 which expires on 2/28/2007, and is not for resale.
User Notes: (2087977832)



*elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

§ 7.3 The Owner's representative is:
*(Name, address and other information)*

Richard Darraugh
505 North 7th Street
Suite 2405
St. Louis, MO 63101

§ 7.4 The Contractor's representative is:
*(Name, address and other information)*

Keith Wolkoff
1001 Boardwalk Springs Place
Suite 220
O'Fallon, MO 63368
Phone: (636) 561-9500

§ 7.5 Neither the Owner's nor the Contractor's representative shall be changed without ten days written notice to the other party.

§ 7.6 Other provisions:


ARTICLE 8   ENUMERATION OF CONTRACT DOCUMENTS
§ 8.1 The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated as follows:

§ 8.1.1 The Agreement is this executed 1997 edition of the Standard Form of Agreement Between Owner and Contractor, AIA Document A101-1997.

§ 8.1.2 The General Conditions are the 1997 edition of the General Conditions of the Contract for Construction, AIA Document A201-1997.

§ 8.1.3 The Supplementary and other Conditions of the Contract are those contained in the Project Manual dated , and are as follows

| Document | Title | Pages |
|----------|-------|-------|

§ 8.1.4 The Specifications are those contained in the Project Manual dated as in Section 8.1.3, and are as follows:
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*
Title of Specifications exhibit:

| ~~Section~~ | ~~Title~~ | ~~Pages~~ |
|---------|-------|-------|

§ 8.1.5 The Drawings are as follows, and are dated     unless a different date is shown below:
*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*
Title of Drawings exhibit:

| ~~Number~~ | ~~Title~~ | ~~Date~~ |
|--------|-------|------|

§ 8.1.6 The Addenda, if any, are as follows:

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:47:55 on 01/23/2007 under Order No.1000224463_1 which expires on 2/28/2007, and is not for resale.
User Notes: (2087977832)

Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 8.

§ 8.1.7 Other documents, if any, forming part of the Contract Documents are as follows:
*(List here any additional documents that are intended to form part of the Contract Documents. AIA Document A201-1997 provides that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement. They should be listed here only if intended to be part of the Contract Documents.)*

Exhibit A - Paric Corporation, Demolition Scope Clarifications dated January 23, 2007

Exhibit B - change order Scope

NOTICE TO OWNER

FAILURE OF THIS CONTRACTOR TO PAY THOSE PERSONS SUPPLYING MATERIAL OR SERVICES TO COMPLETE THIS CONTRACT CAN RESULT IN THE FILING OF A MECHANIC'S LIEN ON THE PROPERTY WHICH IS THE SUBJECT OF THIS CONTRACT PURSUANT TO CHAPTER 429, RSMo. TO AVOID THIS RESULT YOU MAY ASK THIS CONTRACTOR FOR 'LIEN WAIVERS' FROM ALL PERSONS SUPPLYING MATERIAL OR SERVICES FOR THE WORK DESCRIBED IN THIS CONTRACT. FAILURE TO SECURE LIEN WAIVERS MAY RESULT IN YOUR PAYING FOR LABOR AND MATERIAL TWICE.

This Agreement is entered into as of the day and year first written above and is executed in at least three original copies, of which one is to be delivered to the Contractor, one to the Architect for use in the administration of the Contract, and the remainder to the Owner.

| Clarinet, LLC | Paric Corporation |
|---|---|
| _____ | _____ 1/23/07 |
| OWNER *(Signature)* | CONTRACTOR *(Signature)* |
| Manager / Owner | Brian W. Arnold |
| *(Printed name and title)* | Vice President |
| Clarinet LLC | *(Printed name and title)* |

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:47:55 on 01/23/2007 under Order No.1000224463_1 which expires on 2/28/2007, and is not for resale.
User Notes: (2087977832)

# EXHIBIT A
# Paric Corporation
# DEMOLITION SCOPE CLARIFICATIONS
# Switzer Building
# St. Louis, Missouri
# January 23, 2007

## Division One – General Conditions

**1.1 Summary of Work**
    A. The work includes the demolition of an existing 6 story building, and adjoining 2 story buildings with basement garage.

**1.2 Applicable codes**
    A. All work will be completed in accordance with our best knowledge and interpretation of the requirements of the local, state and national codes.

**1.3 Permits and Fees**
Fees assessed by Government Agencies or Utility Companies for impact or escrow fees/bonds or other fees associated with the construction of the property, including, but not limited to, those listed below, are not included.

    A. Acquisition of right of way or grading easements
    B. Water Company Tax Assessments (or any other required tax (assessments) and inspection fees.
    C. Use fees, connection, and review fees
    D. Escrow requirements
    E. As-built deposits
    F. Utility Fees (Water, Sewer, Gas, etc.) for tap destroys.

**1.4 Drawings and Specifications**
This estimate is based on the reference to the following drawings:

    A. Drawings were not available for this proposal.

**1.5 Insurance and Bonds**
    A. We have included Comprehensive General Liability and Automobile Insurance. All certificates of Insurance shall be submitted to the Owner prior to start of construction.
    B. Builder's Risk Insurance is not included.
    C. Performance and payment bond fee's are not included.
    D. Owner's comprehensive protective insurance policy shall be provided by owner.
    E *See Exhibit B, Additional Insureds*

**1.6 General**
    A. Demolition permits are included.

B. Liquidated damages are not included.
C. All work required due to concealed conditions not described in the project documents is not included.
D. Owner Contract will be accordance with the AIA document A101, Lump Sum Agreement.
E. General Conditions will be accordance with the AIA document A201, General Conditions of the Contract for Construction.
F. No retention will be held on Insurance, Professional Services or fee.
G. Temporary sidewalk enclosures or temporary covered walkways are not included.
H. We assume that 1st street and Locust Street can be completely closed during demolition in order to assure safety.
I. We assume that the Eads Bridge can be completely closed during the first 2 weeks of demolition in order to assure safety.

## 1.7 Testing
A. Soil borings and soil investigation and earthwork testing shall be provided by owner. No reports have been provided to Paric Corporation.

## 1.8 Pricing/Schedule
A. This estimate is based upon today's construction costs and does not include any escalation for material or labor increases beyond the anticipated start date of February 28, 2007.
B. Our proposal is based on a six (6) week demolition schedule, starting on Demolition can not be started until all permits and city/historic approvals are procured.
C. Contract start date will not occur until all documents and permits are complete and received.

## Division Two – Sitework

## 2.1 Earthwork
A. The Owner is responsible for the preliminary Geotechnical report.
B. No provisions for rock excavation have been made.
C. Excavation of buried debris or other hidden structures is not included.

## 2.2 Demolition and Removal
A. We have included the general supervision of the removal of hazardous and non-hazardous materials throughout the building by the recommendation provided by SCI Engineering. All abatement work will be contracted direct with the owner.
B. We have included completing all demolition at night for floor 3-5. Demolition will begin after Metro Link has stopped running. Debris will be loaded out during the daylight hours.

C. General Contractor will construct protective barrier over existing electrical panels and switches serving Metro-Link at this time.
D. Crane and "ball" the upper sections of the building down to approximately the third floor level. Debris will be segregated, recycled, or disposed of in accordance to regulations. After building is to the third story contractor will switch to using an excavator with a grapple to disassemble the remainder to the building. After the building has been wrecked to the third story level contractor will then begin to both wreck and load out during daylight hours.
E. We have included the use of water to minimize the dust created by said demolition.
F. Wet Demolition methods will be utilized to remove debris already commingled with asbestos contaminated materials from building collapse and asbestos contaminated material that is presently part of the standing structure. This material will be handled and disposed of as asbestos contaminated debris. All abatement work will be contracted with the owner.
G. We have included removal of material located above boilers when building is down. Boilers will then be abated and materials disposed of or recycled. Properly trained and licensed personnel will conduct all abatement and "Wet Demolition". All asbestos contaminated debris will be removed in properly lined trucks and be disposed of in a properly licensed landfill. Tall abatement work will be contracted with the owner.
H. The bracing currently in place between bridge and building will be left in place to prevent additional collapse of wall onto bridge.
I. Foundations will be removed and Material will be hauled off to the appropriate landfill, recycled or stockpiled in a location as to not impede demolition, abatement or related activities.
J. Clean ruble will remain at a 45 degree angle at 1st Street and Locust Street to act as shoring for the existing streets. We have assumed the foundation wall of the vaults will remain to act as shoring.
K. All debris will be treated as non-salvageable waste.
L. Removal of all footings is included.
M. One ½" water tap destroy is included on Locust.
N. Two sewer tap destroys are included on Commercial Street.
O. We have included the following allowances for Street Repair:
   a. Commercial Street: $10,000
   b. First Street: $5,000
   c. Lucas Street: $5,000
   d. Bridge Road: $5,000

END OF SCOPE CLARIFICATIONS

## EXHIBIT B

**Potential Change Order Scope**

Paric Corporation and Clarinet, L.L.C. agree that any additional expenses prior to the actual start of demolition due only to agencies and / or governmental authorities impacting schedule beyond the contract date or means and methods of demolition, shall be negotiated, determined and agreed to by both Clarinet, L.L.C. and Paric Corporation.

**Additional Insured**

Clarinet L.L.C., St. John's Bank, St. Louis Parking and Cherrick Distributing L.L.C., will be listed as additional insured's by Paric Corporation or its subcontractor's insurance carrier.